UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

919 OLD WINTER HAVEN ROAD
SPE, LLC, *et al.*,

    Plaintiffs,

v.                                    Case No: 8:19-cv-1500-T-36AAS

LEOPOLD FRIEDMAN, *et al.*,

    Defendants.
_____/

## **O R D E R**

This cause comes before the Court on Defendant Leopold Friedman's Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction, (Doc. 43), and Defendants' Amended Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction, (Doc. 47). Plaintiffs have responded in opposition. (Docs. 45, 49). Defendants and Plaintiffs supplemented their motions and responses, respectively, following jurisdictional discovery. (Docs. 51, 54). The Court, having considered the parties' submissions and being fully advised in the premises, will dismiss the action for lack of subject matter jurisdiction.

**I.    BACKGROUND**

919 Old Winter Haven Road, SPE, LLC, 2055 Palmetto Street, SPE, LLC, 703 South 29th Street, SPE, LLC, 1650 Fouraker Road, SPE, LLC, 3663 15th Avenue, SPE, LLC, Auburndale Oaks Care and Rehabilitation Center, LLC, Clear Water Care and Rehabilitation Center, LLC, Laurel Point Care and Rehabilitation Center, LLC, West Jacksonville Care and Rehabilitation Center, LLC, and Atlantic Care and Rehabilitation Center, LLC (collectively, "Plaintiffs") sue Leopold Friedman ("Friedman"), 919 Old Winter Haven Realty, LLC, 2055 Palmetto Realty, LLC, 703 South 29th Street Realty, LLC, 1650 Fouraker Realty, LLC, 3663 15th St. Realty, LLC,

Auburndale Oaks Care Acquisition, LLC, Clear Water Care Acquisition, LLC, Laurel Point Care Acquisition, LLC, West Jacksonville Care Acquisition, LLC, and Atlantic Care Acquisition, LLC (collectively, "Defendants").[1] (Doc. 1 ¶¶1–22). Plaintiffs predicate the Court's subject matter jurisdiction on diversity jurisdiction under 28 U.S.C. § 1332. *Id.* at ¶23. As such, in addition to alleging that the amount in controversy exceeds $75,000, Plaintiffs contend that complete diversity of citizenship exists among the parties. *Id.* According to the complaint, Plaintiffs are citizens of New York because, ultimately, the citizenship of each plaintiff-limited liability company can be traced to Joseph Schwartz ("Schwartz"), a citizen of New York. *Id.* at ¶¶1–10. Further, Plaintiffs allege that Defendants are citizens of Florida because Friedman is a citizen of Florida "with a principal address" in Miami Beach, Florida (the "Miami Beach Address") and the citizenship of each defendant-limited liability company can be traced to Friedman. *Id.* at ¶¶11–21.

However, Defendants argue that complete diversity of citizenship does not exist because Friedman shares New York citizenship with Plaintiffs. (Docs. 43 at 6–8; 47 at 6–8). Defendants accordingly assert that the Court lacks subject matter jurisdiction. (Docs. 43 at 2; 47 at 2). On November 25, 2019, the Court deferred ruling on Defendants' motions to dismiss and allowed the parties to conduct discovery limited to Friedman's citizenship (the "Prior Order"). (Doc. 50 at 13). The parties thereafter timely filed supplemental briefing regarding Friedman's citizenship in

---

[1] Plaintiffs also sue "John & Jane Does 1-10," alleging that these parties are "indispensable" to the action whose identity will likely be uncovered through discovery (Doc. 1 ¶22). While fictitious-party pleading is generally not permitted in federal court, *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (per curiam), fictitious-party pleading is allowed when a plaintiff does not know the identity of the party prior to filing the complaint, but will likely uncover such identity through discovery, *King v. Lake Cnty.*, No. 5:17-cv-52-Oc-34PRL, 2017 WL 6502395, at *6 (M.D. Fla. Dec. 19, 2017) (Howard, J.).

accordance with the Prior Order. (Docs. 51, 54). As such, the motions to dismiss are now ripe for review.

## II. LEGAL STANDARD

Congress granted district courts original subject matter jurisdiction over civil actions sitting in diversity. 28 U.S.C. § 1332. Diversity jurisdiction exists where the lawsuit is between citizens of different states and the amount in controversy exceeds $75,000. *Id.* § 1332(a)(1). Each defendant must be diverse from each plaintiff for diversity jurisdiction to exist under 28 U.S.C. § 1332. *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 412 (11th Cir. 1999). The Eleventh Circuit has repeatedly stressed that "[c]itizenship, not residence, is the key fact that must be alleged . . . to establish diversity for a natural person." *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994). A natural individual is a citizen of the state in which he or she is domiciled. *Plevin v. U.S. Bank Nat'l Ass'n for Fla. Mortg. Resolution Trust, Series 2014-4*, No. 6:15-cv-412-Orl-41KRS, 2015 WL 12859413, at *1 (M.D. Fla. May 13, 2015) (Spaulding, M.J.) (citing *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002)). "A person's domicile is the place of his true, fixed and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *McCormick*, 293 F.3d at 1257 (internal quotation marks and alterations omitted). "Domicile is not synonymous with residence; one may temporarily reside in one location, yet retain domicile in a previous residence." *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1341–42 (11th Cir. 2011). In evaluating a party's domicile, a district court may consider:

> [S]everal types of evidence, including, but not limited to, the party's affidavit, deposition testimony, driver's license, tax returns, banking statements, voter registration, medical records, utility phone bills, employment records, vehicle registration, professional licenses, membership in religious, recreational and business organizations, location of real property, and place of employment.

*Estate of Cochran by and through Pevarnek v. Marshall*, No. 8:17-cv-1700-T-36TGW, 2017 WL 5899200, at *2 (M.D. Fla. Nov. 30, 2017) (Honeywell, J.).

A limited liability company is deemed "a citizen of any state of which a member of the company is a citizen." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) (per curiam). However, when a limited liability company is a member of another limited liability company, the citizenship of that limited liability company member must be ascertained. *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1220 (11th Cir. 2017).

A defendant may attack subject matter jurisdiction in two manners: facially or factually. *McMaster v. United States*, 177 F.3d 936, 940 (11th Cir. 1999). While a facial attack to subject matter jurisdiction merely requires a court to assess, assuming the allegations of the complaint as true, whether the complaint sufficiently alleges a basis for jurisdiction, *McElmurray v. Consolid. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (per curiam)), a factual attack "challenge[s] 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered,'" *Lawrence*, 9191 F.2d at 1529 (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980), *cert denied*, 449 U.S. 953 (1980)). Thus, in assessing a factual challenge to subject matter jurisdiction, a court may consider matters outside of the complaint. *McMaster*, 177 F.3d at 940. A factual attack "relie[s] on extrinsic evidence and [does] not assert lack of subject matter jurisdiction solely on the basis of the pleadings." *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003); *Sream, Inc. v. K & R of WPB, Inc.*, No. 17-cv-80222, 2017 WL 6409014, at *1 (S.D. Fla. May 9, 2017) ("[A] factual attack on a complaint challenges the existence of subject matter jurisdiction using extrinsic

evidence, such as affidavits or testimony."). "When a defendant makes a factual attack, he is challenging the accuracy of the allegations, not their sufficiency." *Norkunas v. Seahorse NB, LLC*, 720 F. Supp. 2d 1313, 1314 (M.D. Fla. 2010) (Corrigan, J.).

## III. DISCUSSION

In moving to dismiss this action under Rule 12(b)(1) of the Federal Rules of Civil Procedure, Defendants assert that complete diversity of citizenship does not exist between Plaintiffs and Defendants. (Docs. 43 at 8; 47 at 8). For the reasons discussed below, Plaintiffs fail to carry their burden of proving complete diversity of citizenship.

### A. Factual Attack and Jurisdictional Discovery

As set forth in the Prior Order, Defendants' subject matter jurisdiction attack constitutes a factual challenge, not a facial challenge, because Defendants challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and introduce evidence outside the pleadings. (Doc. 50 at 9). Defendants challenge the accuracy of Plaintiffs' jurisdictional allegations, not the sufficiency of such allegations. (Docs. 43 at 5–8; 47 at 6–9). In this prototypical factual attack, Friedman offers his declaration—extrinsic evidence—to destroy complete diversity of citizenship between the parties. (Doc. 43 at 6) ("[T]he true citizenship of all of the Defendants is the same as it is with all of the Plaintiffs—to wit: New York."). The parties now provide further extrinsic evidence following jurisdictional discovery. *E.g.*, (Docs. 51-1, 54-1). Therefore, Defendants' attack extends beyond a mere facial attack.

The Court previously granted Plaintiffs' alternative, construed request for limited jurisdictional discovery. (Doc. 50 at 10, 13). To that end, the Court allowed Defendants and Plaintiffs to supplement their motions and responses, respectively. *Id.* at 13. Defendants now supplement their motion with further evidence, including Friedman's supplemental declaration,

5

his driver's license, and certain bills and banking statements. (Docs. 51-1, 51-3, 51-3, 51-4). Plaintiffs likewise supplement their response with evidence, including Friedman's Form 1040 from 2017 and 2018. (Docs. 54-3, 54-4).

### B. Citizenship Analysis

Plaintiffs carry the burden of proving that subject matter jurisdiction exists because Defendants wage a factual attack on the Court's subject matter jurisdiction. *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002) ("In the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists."). In carrying this burden, Plaintiff must prove that subject matter jurisdiction exists by a preponderance of the evidence. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).[2] Because a factual attack necessarily involves evidence beyond the pleadings, the Court may look beyond the pleadings to consider the submitted extrinsic evidence. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009) ("[W]here a defendant raises a factual attack on subject matter jurisdiction, the district court may consider extrinsic evidence such as deposition testimony and affidavits."). Plaintiffs fail to prove, by a preponderance of the evidence, that complete diversity of citizenship exists.

First, Plaintiffs allege that they are citizens of New York. (Doc. 1 ¶23). Defendants do not dispute Plaintiffs' allegations regarding their citizenship, but instead attack Plaintiffs' assessment of Defendants' citizenship. *E.g.,* (Doc. 43 at 8). The Court analyzed Plaintiffs' citizenship in the Prior Order and determined that Plaintiffs are New York citizens because their members are New

---

[2] In *Bonner v. City of Prichard, Alabama*, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

York citizens. (Doc. 50 at 6). The Court declines to repeat that citizenship analysis here. Plaintiffs are citizens of New York.

To establish complete diversity of citizenship between the parties, Plaintiffs allege that Friedman is a citizen of Florida, with the Miami Beach Address serving as his "principal address." (Doc. 1 ¶11). Plaintiffs next allege, upon "information and belief," that Friedman is the sole member of 919 Old Winter Haven Realty, LLC, 2055 Palmetto Realty, LLC, 703 South 29th St. Realty, LLC, 1650 Fouraker Realty, LLC, and 3663 15th St. Realty, LLC. *Id.* at ¶¶12–16. Plaintiffs allege, again upon "information and belief," that each of the remaining defendant-limited liability companies—Auburndale Oaks Care Acquisition, LLC, Clear Water Care Acquisition, LLC, Laurel Point Care Acquisition, LLC, West Jacksonville Care Acquisition, LLC, and Atlantic Care Acquisition, LLC—has another limited liability company as its sole member. *Id.* at ¶¶17–21. Citadel Care Group, LLC allegedly constitutes the only member of these further removed limited liability companies. *Id.* Plaintiffs plead that Friedman is the sole member of Citadel Care Group, LLC. *Id.* Thus, because Friedman allegedly is a Florida citizen, Plaintiffs accordingly contend that Defendants are citizens of Florida. *Id.* at ¶23. The citizenship analysis, therefore, truly turns on Friedman's citizenship. And this is where Plaintiffs fall short.

Defendants assert that, like Plaintiffs, they are New York citizens because Friedman is a New York citizen. (Doc. 43 at 6). Friedman declares that he spends, and historically has spent, the majority of his time in New York. (Docs. 43-1 ¶5(a); 51-1 ¶6(c)). Friedman's responses to Plaintiffs' jurisdictional interrogatories reveal that, to the best of his recollection, he was in Florida for a two-, three-, or four-day period on twenty occasions during 2018. (Doc. 51-2 at 1). He was in Florida on twelve occasions of similar duration in 2019. *Id.* at 2. He declares that he was in Florida for approximately fifty-one days in 2018 and thirty-one days in 2019. (Doc. 51-1 ¶6(c)).

7

He represents that he was in New York for more than half of the calendar year in 2018 and 2019, as well as every prior year "that [he] can remember." *Id.*

Friedman further declares that he intends to reside in New York permanently and his home is located in Brooklyn, New York. (Doc. 43-1 ¶5(d)). When asked to provide the addresses of all real estate owned or leased by him, or which he has a beneficial interest in, since January 1, 2018, Friedman identified four New York addresses—three in Brooklyn, New York and one in Swan Lake, New York—and the Miami Beach Address. (Doc. 51-2 at 2). Friedman describes Brooklyn, New York as the "hub of [his] life." (Doc. 51-1 ¶7). His family lives with him in New York and they do not have a "permanent family residence" outside of New York. (Doc. 43-1 ¶5(c)). Friedman declares that his children are enrolled in school in New York and have not enrolled in school in another state. *Id.* at ¶5(e). To further evidence his ties to New York, he asserts that his religious community, primary place of worship, and rabbi are located in New York. *Id.* at ¶5(i). To the best of his knowledge, the delivery address for "all important financial documents" relating to his finances or his family's finances is a New York address. *Id.* at ¶5(j).

Significantly, Friedman also declares himself a New York resident for tax purposes and does not declare himself a resident of any other state for tax purposes. (Docs. 43-1 ¶5(g); 51-1 ¶6(f)). To that end, Friedman provides redacted New York Resident Income Tax Return forms from 2017 and 2018. (Doc. 51-5 at 1–2). Both of these forms list 50 Skillman Street in Brooklyn, New York (the "Skillman Street Address") as Friedman's mailing address. *Id.*

Friedman also owns, and provides, a New York driver's license. (Docs. 43-1 ¶5(f); 51-1 ¶6(a); 51-3 at 1). The driver's license lists the Skillman Street address as his address. (Doc. 51-3 at 1). Friedman does not own a Florida driver's license. (Doc. 51-1 ¶6(a)). Friedman claims that he registers his personal vehicles in New York, (Doc. 43-1 ¶5(f)), "did not register any vehicles in

Florida," (Doc. 51-1 ¶6(b)), and has not leased or titled any vehicles in Florida from January 1, 2018, through the date of his interrogatory responses, (Doc. 51-2 at 2). Friedman owns a 2018 Lincoln Navigator, which is titled in New York. (Doc. 51-2 at 2). Asserting that he is registered to vote only in New York, (Docs. 43-1 ¶5(f)); 51-1 ¶6(g)), Friedman also provides his New York voter registration. (Doc. 51-6 at 1). The voter registration also lists the Skillman Street address as Friedman's address. *Id.*

Significantly, Friedman asserts that he has neither received nor filed for Florida's homestead property tax exemption. (Docs. 43-1 ¶5(k); 51-1 ¶6(g)). Relatedly, he provides a "Second Home Rider," apparently filed in the Public Records of Miami-Dade County, Florida, (Doc. 51-1 ¶6(i)), which purports to be incorporated into, and deemed to amend and supplement, the security instrument given by the borrower to secure the note for the property located at the Miami Beach Address, (Doc. 51-7 at 1). The Second Home Rider states that the security instrument is amended to state that Friedman, as the borrower who signed the Second Home Rider, must occupy and use the property at the Miami Beach Address only as his second home. *Id.* On this basis, Friedman contends that the Second Home Rider demonstrates that the property located at the Miami Beach Address has never served as his primary residence. (Doc. 51-1 ¶6(g)).

Friedman also offers a May 2019 electric billing statement for electricity services provided to the property located at the Miami Beach Address, a January 2019 utility billing statement from the City of Miami Beach, Florida for services provided to the same property, a payment history from an American Express account evidencing a charge from the City of Miami Beach, and a payment history from a Chase Bank account evidencing a charge from "Fpl Direct Debit Elec Pymt." (Docs. 51-4 at 1–8). Although Friedman contends that the electric and water bills for the property located at the Miami Beach Address "are paid by auto-pay from a New York bank

9

account," the charge descriptions on both the American Express account transaction history and the Chase Bank account transaction history do not match the dates on the accompanying billing statements or otherwise indicate that they expressly pertain to the Miami Beach Address. (Doc. 51-1 ¶6(d)). Nonetheless, the January 2019 utility billing statement and the American Express account statement are addressed to Friedman at a Gates Avenue address in Brooklyn, New York (the "Gates Avenue Address"), and the Chase Bank account statement is addressed to Friedman at the Skillman Street Address. *Id.* at 1, 3, 5.

Finally, the Gates Avenue Address serves as the principal place of business and mailing address for five of the defendant-limited liability companies, of which Friedman is a sole member. (Doc. 43-1 ¶6). He also serves as the sole member of Citadel Care Group, LLC, which is the only member of the other five defendant-limited liability companies, each of which utilizes the Gates Avenue Address for its business and mailing address and constitutes a sole member of one of the prior five defendant-limited liability companies. *Id.* at ¶¶7–13. Friedman declares that he does not utilize a primary business address in any state other than New York. (Doc. 51-1 ¶6(e)). Friedman maintains his "banking relationships" and "virtually all other relationships" in New York. *Id.* at ¶6(g).

Plaintiffs provide a warranty deed for real property in Miami-Dade County, Florida, as well as a 2018 Miami-Dade County real estate tax bill, arguing that these documents both support their allegations and contradict Friedman's assertion that his delivery address for significant financial documents pertaining to his finances or his family's finances is located only in New York. (Doc. 45 at 2–3). The warranty deed lists the Miami Beach Address for Friedman, who is the grantee on the deed. (Doc. 45-1 at 1). The deed is also dated July 10, 2018, *id.*, which is less than two months after the Asset Purchase Agreement was executed on May 29, 2018, and shortly after the June 27,

2018 formal closing, (Doc. 1 ¶¶31, 38). The 2018 real estate tax bill, on the other hand, lists certain ad valorem taxes levied by the City of Miami Beach, Florida. (Doc. 45-2 at 1). The City apparently levied these taxes against the property located at the Miami Beach Address, as that address is below Friedman's name on the bill. *Id.* Plaintiffs highlight that Friedman purchased five nursing home facilities in Florida, as alleged in the complaint, and, consequently, "it was entirely reasonable" for Plaintiffs to allege that Friedman "purchased a residence in the state so that he could live closer to his enormous investment." (Doc. 45 at 3). In light of Friedman's recent purchase of the property at the Miami Beach Address, Plaintiffs argue that the Court should place little value, if any, in where Friedman historically spent the majority of his time. *Id.*

Plaintiffs similarly argue that inconsistencies exist among the listed addresses on Friedman's provided evidence. (Doc. 54 at 1–2). In responding to Plaintiffs' request for Friedman to list the addresses for all real estate which he owned or leased since January 1, 2018, through the date of the responses, Friedman represented that he owned the property located at the Skillman Street Address from 2008 through 2017, rented a property located at another address on Skillman Street from February 2017 through November of 2019, owned a property on 52nd Street in Brooklyn, New York from November 2019 through the date of his responses, owned a property in Swan Lake, New York in 2017, and owned the property located at the Miami Beach Address from July 2018 through the date of his responses. (Doc. 51-2 at 2). Plaintiffs accordingly argue that this response shows that Friedman has not resided at the property for the Skillman Street Address since February of 2017, notwithstanding this address being listed on his driver's license, provided tax returns, and voter registration. (Doc. 54 at 1). Plaintiffs point out that New York issued Friedman's driver's license on October 11, 2018, over a year after he apparently moved from the Skillman Street Address. (Doc. 54 at 1). To further emphasize this inconsistency, Plaintiffs offer Friedman's

11

2017 and 2018 Forms 1040, which provide the Skillman Street Address as Friedman's address. (Docs. 54-4 at 1; 54-4 at 1). Additionally, Friedman produced three 2018 Schedule K-1s for the 2018 tax year and a billing sheet for a Florida home surplus insurance policy, all of which state different Brooklyn, New York addresses for Friedman than those disclosed in Friedman's interrogatory responses. (Docs. 54-5 at 1; 54-6 at 1; 54-7 at 1; 54-8 at 1). On this basis, Plaintiffs argue that the Court "should be very skeptical of Mr. Friedman's jurisdictional position that he a citizen of New York" and that Defendants "have failed to introduce credible evidence that Mr. Friedman is a citizen of New York." (Doc. 54 at 2–3).

Plaintiffs do not carry their burden, in responding to Defendants' attack, of proving, by a preponderance of the evidence, that complete diversity of citizenship exists. As explained above, determining Friedman's citizenship involves examining his domicile, which is the place of his true, fixed, and permanent home and principal establishment, and to which Friedman has the intention of returning whenever he is absent therefrom. As outlined above, the evidence demonstrates, among other things, that Friedman declares himself a resident of only New York for tax purposes, his driver's license lists a New York address, he registers his personal vehicles in New York, he is registered to vote only in New York, his family lives with him in New York, he has owned or rented several properties in New York, his children are enrolled in school only in New York, and his religious community and primary place of worship are located in New York. Defendants' evidence thus overwhelmingly suggests that New York is the place of Friedman's true, fixed, and permanent home and principal establishment, and the location to which he intends to return whenever he is absent therefrom. As such, the evidence strongly suggests that Friedman is a citizen of New York.

Plaintiffs' attempts to cast doubt on Friedman's New York citizenship through attacks on his interrogatory responses and his ownership of the property located at the Miami Beach Address are unavailing. Any attempt to use Friedman's ownership of this property—even if he purchased the property to "live closer to his enormous investment"—to argue that he is domiciled in Florida, and thus establish diversity of citizenship, falls short. (Doc. 45 at 3). Indeed, Friedman does not dispute his ownership of this property, and the Second Home Rider convincingly suggests that this property serves as a second residence. In addition to the other evidence, Friedman declares that he was in Florida for a mere fifty-one days in 2018 and thirty-one days in 2019. Although Defendants point out that Friedman has utilized the Miami Beach Address for certain bills, this use is consistent with the property located at the Miami Beach Address serving as a second home. This property serving as a second home is also consistent with Friedman's assertion that he has not received nor filed for Florida's homestead property tax exemption.

Further, Plaintiffs' argument that the Court should greet Defendants' submitted evidence with skepticism as a result of Friedman's failure to disclose other Brooklyn, New York addresses and his move from the Skillman Street Address to another New York address in 2017, despite listing the Skillman Street Address on his driver's license, tax returns, and voter registration, is also ineffective. Friedman's inclusion of an older Brooklyn, New York address on subsequent New York documents does not prove that diversity of citizenship exists. Friedman's interrogatory responses also reveal that he maintains an ownership interest in the property located at the Skillman Street Address and "currently lease[s] out" that property. (Doc. 51-2 at 2). Friedman's failure to disclose other Brooklyn, New York addresses, even when considered alongside Friedman's use of the older address and Plaintiffs' evidence, likewise does not prove, by a preponderance of the

evidence, that diversity of citizenship exists. Indeed, the additional New York addresses support Defendants' argument that Friedman is a New York citizen.

In sum, Defendants' evidence indicates that Defendants, like Plaintiffs, are citizens of New York.[3] Despite alleging that Defendants are Florida citizens, Plaintiffs have failed to carry their burden of proving, by a preponderance of the evidence, that complete diversity of citizenship exists. Consequently, the Court lacks diversity jurisdiction over this action.

## IV. CONCLUSION

This action is due to be dismissed for lack of subject matter jurisdiction because the Court lacks diversity jurisdiction and Plaintiffs do not invoke another basis for the Court's subject matter jurisdiction. Because a dismissal for lack of subject matter jurisdiction is not a judgment on the merits, the dismissal is without prejudice. *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (per curiam). As such, the Court's dismissal will be without prejudice.

Accordingly, it is **ORDERED** as follows:

1. Defendant Leopold Friedman's Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction, (Doc. 43), is **GRANTED**.

2. Defendants' Amended Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction, (Doc. 47), is **GRANTED**.

3. The complaint, (Doc. 1), is **DISMISSED** without prejudice for lack of subject matter jurisdiction.

4. The Clerk is directed to terminate all pending motions and **CLOSE** this case.

---

[3] Plaintiffs do not argue, and there is no indication, that Defendants' factual challenge implicates the merits, or an element, of Plaintiffs' causes of action.

**DONE AND ORDERED** in Tampa, Florida on February 21, 2020.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any